# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| Kevin LEWIS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) |
| v. | ) _____ |
| | ) |
| Sheriff PATRICK LABAT, in his official capacity as the Sheriff of Fulton County, Georgia, FULTON COUNTY, GEORGIA, Sheriff JOHN T. WILCHER, in his official capacity as the Sheriff of Chatham County, Georgia, and CHATHAM COUNTY, GEORGIA, | ) **Jury Trial Demanded** |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW, Plaintiff Kevin Lewis, and files this Complaint against the above-named Defendants as follows:

**I.   INTRODUCTION**

1. This is an action for discrimination on the basis of disability and for violations of the Fourteenth Amendment right to due process, brought pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131; Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701; and 42 U.S.C. § 1983.

1

2. As a result of a surgical error in 2016, the Plaintiff, Kevin Lewis ("Mr. Lewis"), suffers from ectasia, a degenerative disease that has rendered him completely blind. He relies on a variety of assistive devices for navigation and written communication.

3. On August 1, 2020, while serving as the guest of honor at a fundraiser for the blind, Mr. Lewis was arrested and taken to the Chatham County jail. He remained there, in isolation, until August 3, 2020, when he was transferred to the Fulton County jail, where he remained until August 19, 2020, when he was released on bond.

4. During his incarceration, Mr. Lewis frequently notified the officers and employees of both jails of his condition and need for specific accommodations.

5. During intake and throughout his incarceration, the officers and employees of both jails showed complete and deliberate indifference to Mr. Lewis' disability, confiscated his assistive device, refused to provide him verbal instructions, required him to sign documents without informing him of their contents, and denied him access to a multitude of services available to non-disabled inmates, among other abuse.

6. Notably, Mr. Lewis was also denied his prescribed medication, which is both ameliorative and preventative.

7. This denial of basic medical services is particularly egregious because, for a substantial period of Mr. Lewis' incarceration in the Fulton County jail, he was in a cell covered in his cellmate's vomit and feces, and in this time, Mr. Lewis was not allowed a shower, hand soap, or even toilet paper.

8. Because of the pain, stress, and humiliation he suffered, and because of the extraordinary measures he had to undertake to avoid infection, Mr. Lewis lost twenty-five pounds in the two-plus weeks of his incarceration.

9. When Mr. Lewis posted bond, he was released into house arrest. Four and a half months later, on December 30, 2020, the Superior Court of Fulton County entered an Order of *nolle prosequi* in Mr. Lewis' criminal case because of, *inter alia*, prosecutorial misconduct.

10. Mr. Lewis is gravely concerned about the risk he will again be subject to arrest and detention by Defendants and, because of his disability, will once again be denied equal access to inmate services, basic hygiene, and medical care. Mr. Lewis is further concerned that employees of the Fulton and Chatham County jails may fail to implement legally adequate policies for the intake, processing, confinement, protection, and release of blind individuals, thereby causing miscommunication with and neglect and/or abuse of blind inmates.

11. Mr. Lewis seeks injunctive and declaratory relief requiring Defendants to take the necessary steps to prevent further noncompliance with

the ADA and Rehabilitation Act and the United States Constitution. The Plaintiff further seeks an appropriate award of damages.

12. Mr. Lewis also seeks to recover his attorneys' fees and costs of litigation.

## II. JURISDICTION AND VENUE

13. This Court has original, federal-question jurisdiction over this action, pursuant to 28 U.S.C. § 1331.

14. This Court has personal jurisdiction over Defendants. The tortious actions in question occurred, in part, in Fulton County, Georgia, and two Defendants reside in Fulton County, Georgia, which is located within this district and division.

15. Venue is proper in this Court because Fulton County, Georgia, is located within this district and division and the events in question occurred, in part, therein.

## III. PARTIES

16. Mr. Lewis is a citizen of the State of Georgia and a resident of Cobb County, Georgia. He submits to the jurisdiction of this Court.

17. Mr. Lewis is blind, and he is thus impaired in his ability to perform many major life activities, such as reading, writing, and walking.

18. Because of his blindness, Mr. Lewis is a qualified individual with a disability within the meaning of the ADA and Rehabilitation Act.

19. Sheriff Labat is sued only in his official capacity as Sheriff of Fulton County, Georgia. The Office of Sheriff of Fulton County, Georgia, is a constitutional office and a public entity within the meaning of Title II of the ADA.

20. Sheriff Labat may be served with the summons and complaint at his office, which is located at 185 Central Ave SW, Atlanta, GA 30303.

21. Fulton County is a legal entity created by the constitution of Georgia. It is a public entity within the meaning of Title II of the ADA.

22. Fulton County may be served with the summons and complaint by personal service upon a majority of its commissioners, in accordance with state law, or upon its chief executive officer, in accordance with federal law.

23. Sheriff Wilcher is sued only in his official capacity as Sheriff of Chatham County, Georgia. The Office of Sheriff of Chatham County, Georgia, is a constitutional office and a public entity within the meaning of Title II of the ADA.

24. Sheriff Wilcher may be served with the summons and complaint at his office, which is located at 1050 Carl Griffin Dr, Savannah, GA, 31405.

25. Chatham County is a legal entity created by the constitution of Georgia. It is a public entity within the meaning of Title II of the ADA.

26. Chatham County may be served with the summons and complaint by personal service upon a majority of its commissioners, in accordance with state law, or upon its chief executive officer, in accordance with federal law.

27. All named Defendants are entities that receive federal funds in numerous areas, including law enforcement and corrections.

## IV. Facts

28. Mr. Lewis suffers from corneal ectasia, a rare side-effect of laser-refractive surgery (also known as "LASIK" or "PRK") in which too much flesh is burned off the eyes, causing the corneas to lose their structural integrity and impairing the eyeballs' ability to protect themselves from infection.[1] Progressive ectasia typically results in a painful blindness.

29. Mr. Lewis' affliction dates to 2016, when he received inadequate post-operative care following PRK laser-refractive surgery.

30. By June of 2019, Mr. Lewis' condition had progressed to complete corneal blindness, and the Social Security Administration had deemed him 100% disabled.

31. In support of Mr. Lewis, others in his community organized an event to raise awareness for ectasia and to help Mr. Lewis, the fundraiser's guest

---

[1] Qinghong Lin Et Al., Keratectasia After Laser-Assisted Subepithelial Keratectomy for Myopia (2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5895349/ (last accessed January 12, 2022).

of honor, pay for a surgical procedure that would ameliorate the constant, severe pain of his ectasia.

32. The fundraiser took place on Saturday, August 1, 2020, and the event's finale was to be a sendoff from Mr. Lewis' friends, family, and community, as he left for Florida to undergo the ameliorative surgery the following week.

33. Instead, before the event could conclude, Mr. Lewis was arrested and humiliated, in a coordinated effort between law enforcement and the local media, on charges that would eventually be dropped pursuant to a Fulton County Superior Court Order of *nolle prosequi*.

34. Mr. Lewis asked repeatedly why he was being arrested. No one answered.

35. Instead, his assistive vision device was confiscated, and he was taken to the Chatham County detention center.

36. As Mr. Lewis was being processed through the Chatham County detention center, officers gave him paperwork and told him he had to sign it.

37. When Mr. Lewis asked what the papers said, he was mocked.

38. When Mr. Lewis signed the papers, he was mocked again—this time for how he signed them.

39. As Mr. Lewis progressed station-by-station through the intake process, he asked Chatham County officers where he needed to go next.

40. The most common answer to this question was "Over there" or "That way," presumably with the answering officer pointing his finger a certain direction.

41. At each station, when Mr. Lewis asked approximately how many paces he would need to walk to the next station, he was again mocked. One officer responded, "Kid, if I knew that, I'd be playing the lottery."

42. With no usable instructions, Mr. Lewis tried feeling his way to the next station. He was scolded for "touching everything."

43. The Monday after his arrest, August 3, 2020, Mr. Lewis was transferred to the Fulton County jail. During the intake process at Fulton County, he was finally informed of the reason for his arrest and the charges against him.

44. Ectasia patients like Mr. Lewis need to administer eyedrops regularly to compensate for the damage to their corneas. Because of the severity of his ectasia, Mr. Lewis' prescription requires administration of medical eyedrops six times daily to manage pain, to decrease the frequency of infections, to maintain moisture, and to mitigate further damage to his eyeballs' biomechanical integrity.

45. Throughout his entire stay at the Chatham County jail, Mr. Lewis was denied use of his eyedrops—even after his doctor called Sheriff Wilcher and specifically explained Mr. Lewis' extraordinary need for this basic amenity.

46. At the Fulton County jail, after a full day in general population, Mr. Lewis was able to convince prison officials that he needed to be transferred to the medical unit.

47. When he arrived in the medical unit, he was given an examination by a Dr. Pompey, in which Mr. Lewis explained in detail his condition, its severity, and the kind of care it requires.

48. Mr. Lewis' explanation of his disability and requests for accommodation were immediately discredited and dismissed.

49. At least one guard at the Fulton County jail told several other inmates Mr. Lewis was "faking" his blindness—despite his having been arrested at a fundraiser for the blind at which he was the guest of honor.

50. The following day—that is, Mr. Lewis' third day at the Fulton County jail and fifth day since his arrest—Dr. Pompey returned to Mr. Lewis, apologized for not believing him at first, informed him it was impossible for the jail to provide him the care he needed, and asked him when he was going to be released.

51. Mr. Lewis explained to Dr. Pompey that he had still never spoken to a lawyer since his arrest, and he did not know when, if, or how he was ever going to be released.

52. In response to Dr. Pompey's statement about the difficulty of providing Mr. Lewis adequate care, Mr. Lewis requested several reasonable

9

accommodations—namely, his medication, cleaning supplies for his cell, clean clothes, a clean towel, and access to the shower facilities.

53. Fulton County ignored these requests and left Mr. Lewis in his cell in the medical unit, where he was kept a further two weeks.

54. The conditions in his cell in the medical unit were beyond unsanitary.

55. His cell contained a sink and toilet but no hand soap or toilet paper.

56. His cellmate had an undiagnosed virus causing him a variety of gastrointestinal issues, and so, with no soap or toilet paper available, Mr. Lewis' cell was covered in vomit and feces.

57. Jail staff commented several times on how filthy his cell was.

58. Because of these putrid conditions, Mr. Lewis continued to request—whenever he heard someone walk by—the same accommodations named above: his medication, cleaning supplies, clean clothes, a clean towel, and directions to the showers.

59. His requests—and the similar requests of other inmates on Mr. Lewis' behalf—were still ignored.

60. As Mr. Lewis' cellmate recovered from his viral infection, he introduced Mr. Lewis to another inmate, who was also blind and who warned Mr. Lewis about the prison staff's negligence.

10

61. After several days, his cellmate was transferred, and the jail staff provided Mr. Lewis with some toilet paper, some medication he could use to sanitize his eyes, a bar of soap, and directions to the showers—more than a week after Mr. Lewis was first arrested.

62. Jail staff never provided Mr. Lewis cleaning supplies or clean clothes.

63. Because of his blindness, Mr. Lewis was also denied equal access to multiple services available to non-disabled inmates.

64. For example, to use the inmate telephones at Fulton County, an inmate first must create an account through a computer service the jail offered.

65. The only computers available for this account registration are inaccessible to blind individuals.

66. Mr. Lewis repeatedly requested assistance with registration for a phone account, but his requests were ignored until just a few hours before his release.

67. Because of Defendants failure to provide him access to a telephone, throughout his entire incarceration, Mr. Lewis was never able to make contact with his lawyer.

68. For another example, to use the shower facilities, Mr. Lewis required verbal instructions for how to reach and how to operate them.

11

69. Mr. Lewis requested such instructions several times every day, but the jail staff completely ignored his requests until over a week into his incarceration.

70. As yet another example, the Fulton County jail provides an "inmate handbook" to every person incarcerated there.

71. This handbook contains important information such as the proper process for an aggrieved inmate to attempt to enforce his rights.

72. Mr. Lewis was not aware of the inmate handbook until halfway through his incarceration at Fulton County.

73. When he became aware, he repeatedly requested a copy, but jail staff never provided him one.

74. Upon information and belief, this handbook is only available in written form. Fulton County does not provide it in any format that would be accessible to blind inmates.

75. After two weeks in Fulton County, having suffered frequent abuse, ridicule, and denial of his basic civil and human rights, and having lost approximately twenty-five pounds, Mr. Lewis was finally released into house arrest on August 19, 2020.

76. As part of his house arrest, Mr. Lewis was required to wear an electronic ankle monitor at all times, which ankle monitor was administered by a

government contractor, A and A All County Monitoring Services, Inc. ("A and A").

77. Mr. Lewis was instructed that if he attempted to remove this ankle monitor, or if he allowed it to run out of power, he would be returned to jail.

78. As one of the conditions of his house arrest, Mr. Lewis was also required to submit a bi-weekly payment to A and A.

79. Several weeks into Mr. Lewis' house arrest, A and A transitioned to an online-only payment system, but the website interface for these payments—like with the phone service in the prison—did not meet minimum accessibility requirements for blind individuals.

80. Mr. Lewis' complaints to Fulton County about the inaccessibility of A and A's payment interface were ignored.

81. The ankle monitor itself also presented accessibility issues.

82. The ankle monitor given to Mr. Lewis only used visual indicators to alert its wearer when it was low on power. Rather than beeping or rumbling in a way that would alert a blind wearer, it only featured a blinking light that would change from green to red when the monitor was low on power.

83. Traumatized by his experiences and terrified of being wrongfully incarcerated again, Mr. Lewis spent the next several months all but confined to his bed, the only place in his house where he could easily access an electrical outlet to keep his ankle monitor plugged in.

84. On December 30, 2020, the Superior Court of Fulton County entered its Order of *nolle prosequi*, effectively declaring that Mr. Lewis should never have been arrested in the first place.

V. LEGAL CLAIMS

**Count I – Title II of the Americans with Disabilities Act ("ADA")**

85. By this reference, Plaintiff incorporates the above factual statements as if fully stated herein.

86. Title II of the ADA provides that no "public entity" shall discriminate against an individual with a disability with respect to said entity's "services, programs, or activities."

87. Defendant Wilcher is sued in his official capacity as the Sheriff of Chatham County. The Office of Sheriff of Chatham County is a "public entity" covered by the ADA.

88. Defendant Labat is sued in his official capacity as the Sheriff of Fulton County. The Office of Sheriff of Fulton County is a "public entity" covered by the ADA.

89. Chatham County and Fulton County are "public entit[ies]" covered by the ADA.

90. Title II covers discrimination against disabled persons in inmate facilities. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210, 118 S. Ct. 1952, 1955, 141 L. Ed. 2d 215 (1998). See also 28 C.F.R. § 35.152.

91. "Discrimination" in this context includes providing a public service that is not reasonably accessible to a person with a disability.

92. "Discrimination" in this context includes contracting with a private entity to provide services not reasonably accessible to a person with a disability. See 28 C.F.R. § 35.130.

93. Plaintiff contends that both the Chatham County Sheriff's Office and Chatham County all have responsibilities for managing the Chatham County jail and administering the programs and services of the jail. Each entity is responsible for the failure to provide blind persons with reasonable accommodations therein.

94. Plaintiff contends that both the Fulton County Sheriff's Office and Fulton County have responsibilities for managing the Fulton County jail and administering the programs and services of the jail. Each entity is responsible for the failure to provide blind persons with reasonable accommodations therein.

95. Plaintiff is entitled to relief under Title II of the ADA, including an order that the Defendants all make reasonable modifications to their policies, practices, and facilities to ensure that blind people do not suffer discrimination in their custody.

96. Plaintiff is entitled to recover compensatory damages for the harm he experienced, including fear, humiliation, anger, and other forms of emotional

distress, as a result of the violations of the ADA described herein, due to Defendants' deliberate indifference to the rights of disabled people.

97. The facts presented herein evidence deliberate indifference, in that Mr. Lewis repeatedly requested reasonable accommodations, and his requests were completely ignored by those with policymaking authority.

98. Plaintiff is entitled to additional relief under the ADA, including attorneys' fees and costs.

### Count II – Rehabilitation Act

99. By this reference, Plaintiff incorporates the above factual statements as if fully stated herein.

100. The Rehabilitation Act provides that no entity receiving federal funds shall discriminate against an individual based on that individual's handicap.

101. All named Defendants are entities that receive federal funds in numerous areas, including law enforcement and corrections.

102. The Rehabilitation Act prohibits discrimination coextensive to Title II of the ADA.

103. Defendants are liable to Plaintiff under the Rehabilitation Act to the same extent as under the ADA, as set forth *supra*.

### Count III – Fourteenth Amendment

104. By this reference, Plaintiff incorporates the above factual statements

as if fully stated herein.

105. "[I]t [is] clearly established that a jail official violates a pre-trial detainee's Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee." <u>Lancaster v. Monroe Cty., Ala.</u>, 116 F.3d 1419, 1425 (11th Cir. 1997).

106. Defendants all showed deliberate indifference to Mr. Lewis' serious medical needs by, among other things, failing to provide him with his prescribed medication, failing to provide him basic hygienic amenities such as hand soap and supplies to clean his cell, and ignoring his many requests for same.

107. Defendants all showed deliberate indifference to Mr. Lewis' due-process rights as a pre-trial detainee by, among other things, failing to provide him access to a telephone, so that he could contact legal counsel, and forcing him to sign several documents during intake but refusing to inform him of their contents.

108. As a result of this deliberate indifference to Mr. Lewis' rights, Mr. Lewis suffered substantial harm, including but not limited to financial loss, emotional distress, and mental anguish.

109. For their unconstitutional actions, in violation of clearly established law, Defendants are not entitled to qualified immunity, and they are liable for damages to Mr. Lewis pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiff prays:

a. for a trial by jury;

b. for judgment in his favor on the claims asserted herein;

c. for an order declaring each Defendant to be in violation of the ADA and Rehabilitation Act with regard to their failure to provide adequate accommodations for the Plaintiff and other blind individuals;

d. for an order requiring Chatham and Fulton Counties to make reasonable modifications to their policies and practices such that Plaintiff's disability may be adequately accommodated;

e. that Defendants be required to pay compensatory damages to Plaintiff, in an amount determined by the enlightened conscience of the jury;

f. that Plaintiff be awarded reasonable attorneys' fees and costs; and

g. that the Court grant other legal and equitable relief as the court finds appropriate.

Respectfully submitted this February 8, 2022

*/s/ James Radford*
James Radford
Georgia Bar No. 108007

*/s/ Jake Knanishu*
Jake Knanishu
Georgia Bar No. 597103
*Counsel for Plaintiff*

RADFORD & KEEBAUGH
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0302
james@decaturlegal.com
jake@decaturlegal.com