## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| KEVIN LEWIS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. |
| SHERIFF PATRICK LABAT, | : | 1:22-CV-0532-JCF |
| FULTON CTY., GA | : | |
| SHERIFF JOHN T. WILCHER | : | |
| CHATHAM CTY., GA | : | |
| Defendants. | : | |

## <u>ORDER</u>

Plaintiff Kevin Lewis has filed an amended civil complaint against Defendants (1) Fulton County Sheriff Patrick Labat, (2) Fulton County, Georgia, (3) Chatham County Sheriff John T. Wilcher, and (4) Chatham County, Georgia, raising claims under the Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and 42 U.S.C. § 1983 related to his confinement in the Chatham County and Fulton County Jails between August 1 and 19, 2020. (Doc. 19.)  The matter is before the Court on Sheriff Labat's motion for summary judgment, Sheriff Wilcher's motion for summary judgment, and Plaintiff's responses

in opposition.   For the reasons stated below, it is **ORDERED** that Defendants'
motions for summary judgment are **GRANTED**.

## I.   <u>PROCEDURAL HISTORY</u>

Plaintiff, through counsel, filed a complaint alleging that Defendants violated
the ADA and RA by discriminating against him because of his disability (blindness)
and failing to reasonably accommodate his disability during his confinements in the
Chatham County Detention Center and Fulton Counter Jail.   (<u>See</u> Counts I & II,
doc. 1 at 14-16.)   Plaintiff further alleged that Defendants violated his Fourteenth
Amendment rights by subjecting him to unconstitutional conditions of confinement
and by showing deliberate indifference to his serious medical needs.   (Count III, <u>id.</u>
at 16-17.)   Plaintiff subsequently amended his complaint, asserting the same three
counts.   (Doc. 19.)

Defendants appeared and answered the amended complaint.   (Docs. 22, 24.)
Sheriff Wilcher and Sheriff Labat now move separately for summary judgment on
Plaintiff's claims.   (Docs. 71, 76.)   Plaintiff opposes the summary judgment motions.
(Docs. 84, 85.)

## II.  <u>FACTS</u>

As required by Local Rule 56.1(A), Defendants have filed statements of undisputed material facts ("SMF").  ("Wilcher SMF" [72]; "Labat SMF" [76].) Pursuant to Local Rule 56.1(B)(2)(a)-(b), Plaintiff has filed numbered responses to Defendants' statements, and has filed his own statements of additional material facts ("AMF").  (Pl.'s Resp. [84-1]; Pl.'s Resp. [85-1]; Pl.'s AMF [84-2], Pl.'s AMF [85-2].)  The Court has thoroughly reviewed record in this case and finds that the parties' record citations support the following facts.  <u>See</u> <u>Reese v. Herbert</u>, 527 F.3d 1253, 1269 (11th Cir. 2008) (noting that a district court must independently review the parties' citations to the record in determining whether a genuine issue of material fact exists).

### A.    **Background**

Plaintiff is blind, having suffered from keratectasia, a painful, degenerative condition, since 2016.  (Pl.'s AMF [85-2] ¶ 1.)  Plaintiff was declared legally blind in 2018 and reached "total corneal blindness" in 2019.  (<u>Id.</u> ¶ 3.)  Without preventative medication, Plaintiff's eyes are prone to ulceration and "extraordinarily susceptible" to infection.  (<u>Id.</u> ¶ 2.)

3

### B.    Chatham County Confinement

Plaintiff was arrested on August 1, 2020, by the Savannah Police Department on an outstanding Fulton County warrant.  (Wilcher SMF ¶¶ 1-2.)  Plaintiff was held in the Chatham County Detention Center for less than 48 hours between August 1 and 3, 2020, pending extradition to Fulton County.  (See id. ¶¶ 3, 31.)  The parties dispute whether Plaintiff was made to sign forms during booking without having their contents explained to him.  (See Wilcher SMF ¶ 24; Pl.'s Resp. [85-1] ¶ 27; Pl.'s AMF [85-2] ¶¶ 12-15.)  The record indicates that an officer marked at least two documents "refused to sign."  (Wilcher SMF ¶ 24; Pl.'s AMF [85-2] ¶ 13.)  Plaintiff contends that officers "ridiculed him for not being able to know where he was going," and, when Plaintiff asked an officer how many paces to the next station, the officer told him "[i]f I knew that, I'd be playing the lottery."  (Pl.'s AMF [85-2] ¶¶ 16-17 (alterations omitted)).

During his medical intake, Plaintiff informed a nurse of his need for specific over-the-counter eye drops.  (Wilcher SMF ¶¶ 11-15; Pl.'s AMF [85-2] ¶ 19.)  A physician's assistant wrote prescriptions for the eye drops and other medications and sent the prescriptions to the pharmacy.  (Wilcher SMF ¶ 18.)  Plaintiff's eye drops did not arrive until after Plaintiff was discharged from the Chatham County Detention

4

Center, and he did not receive "any medication pertaining to his eyes" while confined there, although he did receive other medications. (Wilcher SMF ¶¶ 19, 21-22; Pl.'s AMF [85-2] ¶ 22.) Plaintiff deposed that he later learned that a doctor called Sheriff Wilcher and "attempted to ensure the Sheriff understood [Plaintiff's] special needs" for his medication. (Pl.'s AMF [85-2] ¶ 20.)

Plaintiff was placed in an ADA approved cell with telephone. (Wilcher SMF ¶ 28.) Plaintiff testified that he made numerous requests for accommodations that were "ignored" and never documented. (Pl.'s AMF [85-2] ¶¶ 23.) Plaintiff further deposed that no one ever explained to him how to file grievances or assisted him in doing so. (Id. ¶ 24.) The parties agree that the Chatham County Detention Center maintains policies regarding inmates with special needs or disabilities but disagree at length whether these policies are adequate and compliant with the ADA. (See Wilcher SMF ¶¶ 33-37; Pl.'s Resp. [85-1] ¶¶ 32-37; Pl.'s AMF [85-2] ¶¶ 25-39.) Plaintiff was released from the Chatham County Detention Center and transported to Fulton County on August 3, 2020. (See Wilcher SMF ¶¶ 25, 31.)

### C.    Fulton County Confinement

Plaintiff was transferred to the Fulton County Jail on August 3, 2020, and initially housed in the infirmary area. (Labat SMF ¶¶ 3-4.) During intake, plaintiff

5

requested accommodations such as "assisting him with step counts," "describing his surroundings," "helping him read," "helping him write," "helping him get a phone call," and "more." (Pl.'s AMF [84-2] ¶ 12.) Plaintiff indicated that jail officers responded with "indifference" and "excuses." (Id. ¶ 26.)

Plaintiff was medically screened and transferred to a medical cell where he could be observed and handled by medical staff. (Labat SMF ¶ 7.) The doctor initially did not believe that Plaintiff had keratectasia, but, on August 5, came back, apologized, and discussed Plaintiff's condition with him. (Pl.'s AMF [84-2] ¶¶ 5-6.) Plaintiff requested "two kinds of eyedrops, Advil, and a riboflavin vitamin." (Id. ¶ 14-15.) Plaintiff was provided with his allergy medicine, Advil, and "usable" eyedrops, but not the ones he asked for. (Id. ¶¶ 31-32.)

Plaintiff deposed that his medical cell "reeked of feces," and that he was only provided at intake with a pair of boxers and a washcloth. (Id. ¶¶ 30, 37.) On August 6, Plaintiff received a cell mate with a stomach virus. (Id. ¶ 33.) Without any toilet paper, Plaintiff's cell mate was forced to use his clothing to clean himself. (Id. ¶ 34.) Both Plaintiff and his cell mate became sick with "high fever[s]," and there were "feces all over the floor." (Id. ¶ 34.) Plaintiff stated that after "ten days of begging," he was provided with an extra undershirt, a bar of soap, and one roll of toilet paper.

(Id. ¶ 38.)   "[A]t every opportunity" and "many, many, many times," Plaintiff requested his preferred medication and sanitary supplies including soap, toilet paper, clean clothes, a new washcloth, sanitizing wipes, and cleaning supplies.  (Id. ¶¶ 16-17, 19-24, 38.)  Plaintiff was released to house arrest on August 19, 2020.  (See id. ¶ 27.)  Plaintiff's criminal charges were dismissed in December 2020.  (Id. ¶ 4.)

Plaintiff did not file any formal grievances while at the Fulton County Jail. (Labat SMF ¶ 8.)  Plaintiff stated that this is because the grievance procedure was never explained to him, no one ever assisted him with using the grievance process, and he was not registered in the phone kiosk system until a few hours before his release.  (Pl.'s AMF ¶¶ 27-29.)  The parties agree that the Fulton County Jail maintains policies regarding inmates with special needs or disabilities but disagree at length whether these policies are adequate and compliant with the ADA.  (See Labat SMF ¶¶ 9-14; Pl.'s Resp. [84-1] ¶¶ 10, 13; Pl.'s AMF [84-2] ¶¶ 42-69, 76.)

## III.   **DISCUSSION**

Summary judgment is proper if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether the movant has met this burden, courts must view the evidence and all factual inferences in the light most favorable

to the non-movant.  Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1263-64 (11th Cir. 2010).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

"Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant.  For factual issues to be considered genuine, they must have a real basis in the record."  Mize v. Jefferson City Bd. Of Educ., 93 F.3d 739, 742 (11th Cir. 1996).  "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).  Accordingly, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion for summary judgment and identify those portions of the pleadings which it believes show an absence of any genuine issue of material fact.  Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008).  The movant may

8

meet this burden by showing that the non-moving party has failed to present appropriate evidence in support of an element of the case on which the non-moving party bears the burden of proof at trial.  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  The burden then shifts to the non-movant to establish, by going beyond the pleadings, that a genuine issue of material fact exists.  Matsushita, 475 U.S. at 586-87.

### A.    Eleventh Amendment Immunity

Sheriff Wilcher argues that Plaintiff's ADA and § 1983 constitutional claims are barred by the Eleventh Amendment.  (Doc. 71-1 at 21-22.)  Because an assertion of sovereign immunity essentially challenges a court's subject matter jurisdiction, the Eleventh Amendment will be addressed first.  See Hutchinson v. Cunningham, No. 2:17-cv-185-WKW-GMB, 2018 WL 1474906, at *24 (M.D. Ala. Jan. 23, 2018).

The Eleventh Amendment bars a damages action against a state in federal court unless there has been a waiver by the state or a valid congressional override.  Redding v. Georgia, 557 F. App'x 840, 844 (11th Cir. 2014).  The Eleventh Amendment likewise applies to suits against state officials who are sued for damages in their official capacity.  Id.  Importantly, immunity does not apply where Congress has: (1) unequivocally expressed its intent to abrogate a states' immunity through a clear

9

legislative statement, and (2) acted pursuant to a valid grant of constitutional authority.  Id.  The Supreme Court of the United States has held that "insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  United States v. Georgia, 546 U.S. 151, 159 (2006).  Interpreting this holding, the Eleventh Circuit Court of Appeals, in Redding, held that to avoid Eleventh Amendment immunity on an ADA claim, the plaintiff must show that the conduct underlying the ADA claim also violated the Constitution. 557 F. App'x at 845.  In this factual context, Plaintiff's ADA claims will overcome Defendants' Eleventh Amendment immunity only if an actual Fourteenth Amendment violation occurred.[1]  See id.

---

[1] Plaintiff argues in his response briefs that Defendants' failures to document his requests for accommodation denied him his First and Fourteenth Amendment right to access the courts, which was an actual constitutional violation for purposes of overcoming Eleventh Amendment immunity with respect to his ADA claims. (See doc. 84 at 14-17; doc. 85 at 15-18.)  Because Plaintiff's Rehabilitation Act claims render immaterial whether the ADA abrogates Defendants' immunity to suit (see infra), and because Plaintiff explicitly clarifies that he is not presenting freestanding § 1983 claims for denial of access to courts (see doc. 84 at 16; doc. 85 at 17.), the undersigned will not address these contentions further.

Nevertheless, it is well-settled that Defendants are not entitled to Eleventh Amendment immunity as to Plaintiff's materially identical Rehabilitation Act claims. There is no dispute in this action that Defendants receive federal funding.  By accepting federal funding, state agencies waive Eleventh Amendment immunity and are deemed to consent to private suits under the Rehabilitation Act.  Garrett v. Univ. of Ala. at Birmingham Bd. of Trs., 344 F.3d 1288, 1292-93 (11th Cir. 2003) (holding that 42 U.S.C. § 2000d-7 "unambiguously conditions the receipt of federal funds on a waiver of Eleventh Amendment immunity" to claims under the acts listed, including Section 504 of the Rehabilitation Act).  Consequently, this Court need not resolve at this juncture whether Title II of the ADA abrogates Defendants' Eleventh Amendment immunity to suit.  See, e.g., Grayson v. Ivey, No. 5:19-cv-0193-TES-CHW, 2020 WL 4201194 at *4 (M.D. Ga. Jul. 22, 2020) ("Additionally, as Plaintiff's RA claims proceed, it is immaterial whether Title II of the ADA abrogates the state's immunity to suit."); see also Bennet-Nelson v. La. Bd. of Regents, 431 F.3d 448, 455 (5th Cir. 2005) ("[H]aving already held that sovereign immunity does not bar the appellants' claim under [the RA], we need not address at this juncture the issue of abrogation under Title II of the ADA, because the rights and remedies under either are the same for purposes of this case.").

11

Defendants are, however, immune from Plaintiff's § 1983 claims for damages asserted against them in their official capacities.  See, e.g., Manders v. Lee, 338 F.3d 1304, 1328 (11th Cir. 2003) (holding that a Georgia sheriff is an "arm of the state" when performing his/her correctional function at a county jail and dismissing § 1983 suit against sheriff in his official capacity related to jail's use-of-force policy).  The amended complaint is brought against Defendants in their official capacities only. (See doc. 19 at 1, 5.)  Consequently, Sheriff Labat is entitled to summary judgment on Plaintiff's § 1983 medical deliberate indifference claim[2] and Sheriffs Wilcher and

---

[2] Alternatively, the undersigned finds that Sheriff Labat is entitled to summary judgment on the merits of Plaintiff's medical deliberate indifference claim.  As an initial matter, Sheriff Labatt in his official capacity is not a "person" within the meaning of § 1983.  See Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989). Further, there is no evidence in the record that Sheriff Labat (1) personally participated in the alleged constitutional violations, or (2) was casually connected to the alleged constitutional violations such that he may be held liable under § 1983. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) ("It is well established in this Circuit that supervisory officials are not liable under §1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). Finally, it is undisputed that Plaintiff received medical care at the Fulton County Jail, including "usable" eye drops.  (See Pl.'s AMF [84-2] ¶¶ 5-6; 31-32.)  Plaintiff's preference for different eye drops does not give rise to a constitutional claim.  See McLeod v. Secretary, Fla. Dep't of Corr., 679 F. App'x 840, 843 (11th Cir. 2017) ("Where an inmate receives medical treatment but desires different modes of

Labat are entitled to summary judgment on any other freestanding § 1983 Fourteenth Amendment due process claims asserted in Count III of the amended complaint.[3]

## B.   CLAIMS AGAINST CHATHAM AND FULTON COUNTIES

The Eleventh Circuit has held that Georgia sheriffs are not county policymakers when promulgating policies and procedures governing conditions of confinement at county jails.  See, e.g., Grech v. Clayton County, 335 F. 3d 1326, 1348 (11th Cir. 2003) (holding that Georgia sheriffs are not county policymakers when performing their law enforcement function); see also Manders 338 F.3d at 1328 (holding that a Georgia sheriff is a state official for purposes of enacting policies at a county jail); Purcell ex rel. Estate of Morgan v. Toombs Cty., 400 F.3d 1313

---

treatment, the care provided does not amount to deliberate indifference.").  This Court need not address any freestanding § 1983 medical deliberate indifference claim against Sheriff Wilcher and Chatham County because Plaintiff affirmatively abandoned that claim in his summary judgment response.  (Doc. 85 at 6-7.)

[3] The Court notes that Sheriff Labat did not seek summary judgment on Eleventh Amendment grounds in his motion.  (See generally doc. 76.)  Nevertheless, this Court may consider Eleventh Amendment immunity *sua sponte* because it bears on the Court's subject-matter jurisdiction.  See, e.g., Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 381, (5th Cir. 2002) (noting that Eleventh Amendment immunity may be raised *sua sponte* at the summary judgment stage).  In any event, there is no prejudice to Plaintiff, as he briefed the Eleventh Amendment immunity issue with respect to both summary judgment motions.  (See doc. 84 at 14; Doc. 85 at 15-18.)

(11th Cir. 2005) (same). Because Plaintiff has not alleged, much less shown, that Chatham or Fulton Counties promulgated or enforced any policies or customs that violated his statutory rights under the ADA and RA or his constitutional rights, the defendant counties are entitled to summary judgment on all claims. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (holding that, to establish county liability, a plaintiff must identify either (1) an officially promulgated county policy, or (2) an unofficial practice or custom of the county shown through the repeated acts of a final policymaker of the county); see also Grech, 335 F.3d at 1329 (explaining that Georgia counties are liable only "for acts for which the county is actually responsible," and are not liable for the actions of county sheriffs on a *respondeat superior* theory).

## C.   THE ADA AND REHABILITATION ACT

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1081 (11th Cir. 2007). Similarly, Section 504 of the Rehabilitation Act states:

14

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a).  Title II of the ADA has been held to apply to disabled inmates who are denied participation in an activity or program provided in a state correctional facility.  Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 211, 213 (1998).  Because "causes of action under Title II of the ADA and the Rehabilitation Act are essentially identical," the claims will be considered simultaneously.  R.W. v. Bd. of Regents of the Univ. Sys. of Ga, 114 F. Supp. 3d 1260, 1282 (N.D. Ga. 2015).

Where a plaintiff seeks compensatory damages, as is the case here, the plaintiff "must clear an additional hurdle" and show that the entity engaged in intentional discrimination.  Silberman v. Miami Dade Transit, 927 F.3d 1123, 1134 (11th Cir. 2019).  Stated another way, "a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory intent."  McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1146-47 (11th Cir. 2014).  "A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights."  Id.  Deliberate indifference is an "exacting standard."  Silberman, 927 F.3d at 1134.  "It requires proof that 'the defendant knew

that harm to a federally protected right was substantially likely and ... failed to act on that likelihood." Id.

Moreover, to hold a government entity liable, a plaintiff must also show that an "official" had actual knowledge of discrimination in the entity's programs and failed to adequately respond. Id. At a minimum, the official must have had the authority to address the alleged discrimination and to institute corrective measures on the entity's behalf. Id. The purpose of this rule is to "ensure that an entity is only liable for the deliberate indifference of someone whose actions can fairly be said to represent the actions of the organization." Liese v. Indian River Hosp. Dist., 701 F.3d 334, 350 (11th Cir. 2012).

As an initial matter, the record belies Plaintiff's contention that the Chatham County Detention Center's and Fulton County Jail's policies facially discriminate against vision-impaired inmates by requiring that requests for accommodation be made in writing. (See Doc. 84 at 11; doc. 85 at 9.) The evidence shows that both Defendants' policies require staff to assist disabled inmates who are unable to read or write, an accommodation specifically permitted by the ADA. (See doc. 71-8 at 74; Doc. 77-2 at 3-4.); see also 42 U.S.C. § 12103(1) (defining a "qualified reader").

Consequently, there is no genuine dispute of fact as to whether defendants' policies are facially discriminatory.

As to Plaintiff's core contentions that Defendants denied him reasonable accommodations (1) during the booking process at both institutions, (2) by failing to provide him with his requested medicated eye-drops at both institutions, and (3) by subjecting him to unsanitary conditions at the Fulton County Jail, there is no evidence in the record that any of the alleged failures-to-accommodate were the result of either a policy prohibiting accommodations or a custom or practice of denying accommodations. Moreover, there is no evidence in the record supporting that Defendants acted with the deliberate indifference necessary to permit the recovery of damages under the ADA.

Construing in Plaintiff's favor the evidence that jail officers failed to count paces, describe his surroundings, offer explanations, assist him in using the phone and/or answer his questions about the documents he was being made to sign during booking, Plaintiff was not "denied the benefits of" his arrest and booking. See Rosen v. Montgomery Cty., Md., 121 F.3d 154, 157-58 (4th Cir. 1997) (holding that deaf plaintiff was not denied the benefits of his arrest and booking where officers obtained the information they needed and completed the booking process, even though the

Plaintiff "could not follow everything the officers were telling him"); see also Rylee v. Chapman, No. 2:06-cv-158-RWS, 2008 WL 3538559 at *7-*8 (N.D. Ga. Aug. 11, 2008) (applying Rosen and concluding that hearing-impaired plaintiff was not denied the benefits of his arrest where the booking process was completed and he was not arrested on account of his disability).

As to plaintiff's request for eye-drops, the uncontroverted record evidence is that the Chatham County Detention Center did prescribe and order Plaintiff's eye-drops, but that they did not arrive at the pharmacy until after the conclusion of Plaintiff's brief confinement in that institution, and that the Fulton County Jail did provide Plaintiff with "usable" eye-drops, albeit not the ones he requested.  See Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 146 (1st Cir. 2014) (holding, in the context of a prisoner's claim against a prison system, that § 504 "entitle[s] [a disabled individual] to reasonable accommodations, not to optimal ones finely tuned to his preferences").  This evidence simply does not satisfy, as a matter of law, the exacting standard of deliberate indifference to support a claim for damages.  See Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) ("[D]eliberate indifference is not a constitutionalized version of common-law negligence," and the standard therefore "is far more onerous"); see also King v. Fairman, 997 F.2d 259, 261 (7th Cir. 1993)

(explaining that deliberate indifference requires "a total unconcern for [the plaintiff's] welfare in the face of serious risks").  That both the Chatham County Detention Center and the Fulton County Jail made non-perfunctory efforts to obtain adequate eye drops precludes a finding of deliberate indifference.

With respect to Plaintiff's complaint of general unsanitary conditions at the Fulton County Jail, there is no evidence in the record that Plaintiff was subjected to the complained-of conditions of confinement *because he was disabled*, or that he was excluded from some jail program, service, or activity *that non-disabled prisoners could participate in*.   Rather, Plaintiff's claim challenges general conditions experienced by all inmates in the Fulton County Jail, which does not implicate the type of arbitrary disability discrimination for which ADA and RA provide a remedy. See, e.g., Hammonds v. DeKalb Cty, Ala., No. 4:16-BE-1558-M, 2017 WL 363974 at *6 (N.D. Ala. Jan. 25, 2017) (finding non-cognizable under the ADA and RA plaintiff's complaints of generally incompetent medical care in jail where quality of care received by the disabled plaintiff was the same as the care received by other non-disabled inmates); see also Scheer v. Allegheny County, No. 21-1514, 2023 WL 2653468 at *7 (W.D. Pa. Feb. 2, 2023) (dismissing inmate's ADA challenge to COVID-19 restrictions on phone calls, mail, recreation, and commissary where such

19

restrictions were applicable to all inmates and not imposed on plaintiff on account of his disability), <u>R&R adopted</u> 2023 WL 2649462 (W.D. Pa. Mar. 27, 2023).  Nor does the record contain any evidence of the requisite knowledge and intent on the part of Sheriff Labat so as to constitute deliberate indifference.  <u>See</u> <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1364 (11th Cir. 1999) (stating that, under a deliberate indifference standard, summary judgment must be granted unless the plaintiff presents evidence of the official's subjective knowledge of a risk of serious harm); <u>see also</u> <u>Ruiz-Bueno v. Scott</u>, 639 F. App'x 354, 359 (6th Cir. 2016) (stating that deliberate indifference does not permit claims regarding what jail officials "should have known or should have done").  Indeed, there is no evidence in the record that Sheriff Labat had actual knowledge of disability discrimination in the jail's programs in terms of either general knowledge of violations or specific knowledge of any alleged violations related to Plaintiff.  <u>Cf.</u> <u>Silberman</u>, 927 F.3d at 1134.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's ADA and RA claims.

### D.    CLAIMS FOR INJUNCTIVE RELIEF

Plaintiff seeks prospective injunctive relief compelling defendants to modify their policies and practices to adequately accommodate Plaintiff's disability.  (<u>See</u>

20

doc. 19 at 18-19.)   The Court agrees with Defendants that Plaintiff's claims for prospective injunctive relief are moot in light of his release from custody and dismissal of his criminal charges.  See McKinnon v. Talladega Cty., Ala., 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief" even when "there is no assurance that he will not be returned to the jail[.]")  Plaintiff's arguments that he could be re-arrested at some indeterminate point in the future on some indeterminate charges are speculative and unripe.  Cf. Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (holding that the "capable of repetition, yet evading review" exception to the mootness doctrine applies when there is a "reasonable expectation" that the same complaining party would be subjected to the same action again); see also, e.g., Van Wie v. Pataki, 267 F.3d 109, 115 (2d Cir. 2001) (explaining that "speculation" or "a mere theoretical possibility that the same controversy is capable of repetition" is insufficient to invoke the exception to the mootness doctrine). Defendants are entitled to summary judgment on Plaintiff's claims for injunctive relief.  Because Defendants are entitled to summary judgment on all claims presented in the Amended Complaint, their motions are due to be granted.

IV.   **CONCLUSION**

For the reasons stated above, it is **ORDERED** that Defendants' motions for summary judgment [71], [76] are hereby **GRANTED**.[4]

The Clerk of Court is **DIRECTED** to enter final judgment in favor of the defendants and to close the case.

**SO ORDERED**, this <u>18th</u> day of <u>July</u>, 2023.

<u>/s/ J. Clay Fuller</u>
J. Clay Fuller
United States Magistrate Judge

---

[4] The parties in this case have consented to magistrate judge jurisdiction.  (<u>See</u> docs. 28, 31.)  Consequently, the undersigned possesses authority under 28 U.S.C. § 636(c)(1) to enter a final judgment in this action.